IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON FLANNERY,                        )        CASE NO.1:06CV1938
                                       )
                   Petitioner,         )
                                       )        JUDGE ADAMS
        v.                             )
                                       )        MAGISTRATE JUDGE HEMANN
STUART HUDSON, Warden,                 )
                                       )        **REPORT AND RECOMMENDATION**
                   Respondent.         )

        This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before

the court is Jason Flannery's ("Flannery") petition for a writ of habeas corpus filed pursuant

to 28 U.S.C. § 2254 on August 14, 2006.  Flannery is in the custody of the Ohio

Department of Corrections pursuant to his guilty plea in *State of Ohio v. Flannery*, No. 03-

CR-13-D (Richland County 2003).  For the reasons set forth below, the magistrate judge

recommends that the court grant the petition in part.

I

        The January 2003 term of the Richland County grand jury indicted Flannery on two

counts of kidnaping, four counts of rape, one count of tampering with evidence, and two

counts of felonious assault.  The state appellate court reviewing Flannery's appeal found

the following facts to be relevant to Flannery's indictment and conviction:

> {¶ 3} On Sunday, August 18, 2002, twenty year old Anna Adkins ["Adkins"] and
> seventeen year old Ashley Gaines ["Gaines"] decided to drive from Shelby, Ohio,
> to Mansfield, Ohio, to make contact with an ex-boyfriend of Ms. Gaines.

{¶ 4} Sometime around 8:00 p.m., Ms. Adkins drove her 1994 Ford Escort to a gas station so that Ms. Gaines could call her ex-boyfriend from the pay telephone. While on the telephone, one Richard Myers, a co-defendant herein, drove his 1995 Dodge Intrepid near the pay phone and began to make small talk with Ms. Gaines. Myers convinced Ms. Adkins and Ms. Gaines to follow him to 372 Bell Street, Mansfield, Ohio, in order to become better acquainted. Ms. Adkins parked her car directly in front of the residence.

{¶ 5} The group drank beer and visited while at the residence.

{¶ 6} The group left the residence on Bell Street to go to one George Keeton's house located on Seminole Avenue, Mansfield, Ohio.  Mr. Keeton is another co-defendant in this case. Myers drove the girls in his 1995 Dodge Intrepid to Keeton's residence.

{¶ 7} At the residence, the girls met George Keeton, Jason Flannery (the Appellant in this matter), Sonny Flannery, and John Lykins.  Consequently, Ms. Adkins, Ms. Gaines, Richard Myers, Appellant Jason Flannery, George Keeton and another person left the residence in a large white van.  The party decided to travel to a club called "Fantasy Land" located in Bucyrus, Ohio.  A stop was made at a Speedway gas station to purchase some pop to mix with Everclear, a highly potent alcoholic beverage.  Keeton paid everyone's ten dollar cover charge, purchased a V.I.P. lap dance, and bought all the non-alcoholic beverages while at the club.

{¶ 8} Sonny Flannery then drove everyone back to Mansfield where he stopped his vehicle at the Speedway located at Route 30 and Timble Road.  John Lykins and Sonny Flannery left in Mr. Flannery's van. Richard Myers, George Keeton, Appellant Jason Flannery, Ms. Adkins, and Ms. Gaines continued to party.  Mr. Keeton became upset about some missing money and drugs while at the gas station.  After he calmed down, the five individuals agreed they would take a ride out into the country. Mr. Keeton once again became upset about his missing money and drugs. He turned to the girls in the backseat and began yelling at them that he was a thug and he was going to kill them both, he would never get caught, and their bodies would be dumped in a lake where no one would ever find them.

{¶ 9} The girls were pleading for their lives.  Ms. Adkins attempted to exit the motor vehicle as it was approaching a stop sign.  Mr. Keeton told the appellant to speed up the vehicle.  The appellant sped up the vehicle causing the car door to hit Ms. Adkins' leg. The car, with the doors now locked by Richard Myers, then proceeded to drive without stopping at any of the stop signs.  At one point, Ms. Adkins and Ms. Gaines were allowed to get out of the car.  They went to a home, knocked on a door, but there was no response.  Myers' car circled around and located the girls. Myers and Keeton assured the girls that he had now calmed down.  Ms. Adkins and Ms. Gaines did not know where they were at this time.  They decided to get back into the vehicle to allow Myers to take them back to their car which was still located at the Bell Street residence.  A short while later, Keeton again began complaining

2

about his missing money and drugs.  He told Ms. Adkins and Ms. Gaines to take off their clothes because he wanted to check for his missing money.  Mr. Keeton tossed the girls' clothing and a book bag belonging to Ms. Gaines out of the car.  Some of the clothing was later found in Richland County, Ohio, by a deputy sheriff.

{¶ 10} Keeton and Appellant Jason Flannery started punching the girls with closed fists, throwing approximately twelve blows, striking each girl approximately six times each in their faces.  Myers turned off the car's interior lights and the headlights. Keeton then forced the girls to perform various sexual acts.  Keeton and Appellant Jason Flannery inserted their fingers inside Ms. Adkins' vagina.  Myers continued to drive the car. Keeton told Myers to stop the car so that they could toss Ms. Adkins out onto the street. Myers complied with this request.  Appellant Jason Flannery held Ms. Gaines by her hair to prevent her from escaping from the vehicle.

{¶ 11} Keeton then forced Ms. Gaines to perform fellatio upon him.  Appellant Jason Flannery, who was in the back seat, began inserting his fingers inside of Ms. Gaines' vagina and anus.

{¶ 12} Keeton then ordered Ms. Gaines to have oral sex with Myers and Appellant Jason Flannery.  While still driving his car, Myers voluntarily opened up his pants and made his penis available for Ms. Gaines.  Keeton forced Ms. Gaines to perform fellatio upon Myers and upon Appellant Jason Flannery.  While this was occurring, Keeton inserted his fingers inside Ms. Gaines' vagina and anus.

{¶ 13} Approximately forty-five minutes after Ms. Adkins was let go, Keeton told Myers to stop the car and Appellant Jason Flannery kicked Ms. Gaines out of the onto the street.

{¶ 14} Myers then drove Keeton and Appellant Flannery back to 372 Bell Street, Mansfield, Ohio, where Ms. Adkins had left her car. Keeton and Appellant Flannery broke a window and moved the car down the street.

{¶ 15} A short time later, Richard Myers and Appellant Jason Flannery were arrested by the Mansfield Police Department. Richard Myers was stopped for having an obstructed license plate. His car also matched a description put out in a police bulletin from Ashland County about a possible abduction.

*State v. Flannery,* 2005 WL 750077 (Ohio App. April 1, 2005)

Flannery pleaded not guilty to the indictment and was tried before a jury.  On January 22, 2003 the jury found Flannery guilty on all counts.  On February 3, 2003 the court sentenced Flannery to terms of six and eight years' imprisonment on the two counts

3

of kidnaping, two terms of six years and two terms of eight years on the four counts of rape, a term of one year on the count of tampering with evidence, and two terms of three years on the two counts of felonious assault.  The terms for kidnaping and the two six year terms for rape were to be served consecutively, and the two eight year terms for rape were to be served consecutively to the other sentences but concurrently with each other.  All other terms were to be served concurrently with the previous sentences.  On February 3, 2003, the court determined Flannery to be a sexual predator.

Flannery, represented by new counsel, timely filed a notice of appeal of his conviction and sentence.  He alleged twelve assignments of error on appeal:

I.    THE COURT COMMITTED PLAIN ERROR WHEN IT ALLOWED STATE'S WITNESS TO GIVE AN OPINION AS TO THE VERACITY OF ANOTHER WITNESS.

II.   THE COURT COMMITTED PLAIN ERROR BY ADMITTING A LETTER ALLEGED TO BE WRITTEN FROM ONE CO-DEFENDANT TO THE OTHER CO-DEFENDANT.

III.  THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN SENTENCING DEFENDANT/APPELLANT TO CONSECUTIVE TERMS TOTALING 28 YEARS.

IV.   THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GIVING A NON RESPONSIVE AND MISLEADING INSTRUCTION TO THE JURY'S QUESTION.

V.    THE TRIAL COURT COMMITTED PLAIN ERROR IN SENTENCING DEFENDANT ON THE RAPES AND KINAPINGS [sic] AS SAME ARE ALLIED OFFENSE [sic] OF SIMILAR IMPORT.

VI.   THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO DECLARE A MISTRIAL DUE TO PROSECUTOR MISCONDUCT.

VII.  THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

VIII.    THE GUILTY VERDICT ON FELONIOUS ASSAULT WAS BASED UPON EVIDENCE INSUFFICIENT AS A MATTER OF LAW.

IX.      THE TRIAL COURT ERRED IN REFUSING TO GRANT DEFENDANT/APPELLANT'S RULE 29 MOTION FOR ACQUITTAL.

X.       DEFENDANT/APPELLANT WAS ERRONEOUSLY CONVICTED OF TAMPERING WITH EVIDENCE WHEN IT WAS CLEAR THAT IT WAS NOT COMMITTED IN RICHLAND COUNTY.

XI.      CLEAR AND CONVINCING EVIDENCE DID NOT SUPPORT A FINDING OF SEXUAL PREDATOR.

XII.     THE TRIAL COURT COMMITTED PLAIN ERROR BY IT'S [sic] FAILURE TO INSTRUCT ON ALL OF THE ELEMENTS IN COUNTS II, IV AND V OF THE INDICTMENT.

On April 1, 2005 the state appellate court affirmed the judgment of the trial court.

Flannery appealed the decision of the state appellate court to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Flannery asserted seven propositions of law:

Proposition of Law No. I:

The failure to federalize Assignments of Error and to argue applicable constitutional dimension to the issues on direct appeal by appellate counsel constitutes ineffective assistance of counsel on appeal in violation of the state and federal Constitutions.

Proposition of Law No. II:

The admission of testimony from a medical witness that a complaining witness was "truthful" and the admission of a letter written to and from non-testifying co-defendants as proof of the guilt of a defendant violated the Confrontation Clause of the U.S. Constitution.

Proposition of Law No. III:

It is a violation of the Sixth Amendment to impose a sentence greater than the maximum based on fact finding not inherent in the verdict or expressly found by the jury.

5

Proposition of Law No. IV:

> The failure to instruct the jury on every essential element necessary to sustain a conviction violates the Constitutional right to due process of law and to a fair trial by jury.

Proposition of Law No. V:

> When the prosecutor in a criminal case commits misconduct designed to inflame the passions and prejudices of the jury, any resulting conviction violates Due Process of Law and requires reversal when the misconduct affects the fairness of the proceedings.

Proposition of Law No. VI:

> When trial counsel fails to raise proper objections, and the defense is prejudiced thereby, the defendant has been denied the effective assistance of  counsel guaranteed by the State and Federal Constitutions.

Proposition of Law No. VII:

> The absence of clear and convincing evidence that a defendant is likely to commit sexual offenses in the future precludes the adjudication of the defendant as a sexual predator under R.C. § 2950.09, e. [sic] seq.

On August 10, 2005 the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question.

On August 14, 2006 Flannery filed a petition for a federal writ of habeas corpus.

Flannery asserts seven grounds for relief in his petition:

> Ground for relief no. I
> The failure to federalize assignments of error and to argue applicable constitutional dimension to the issues on direct appeal by appellate counsel constitutes ineffective assistance of counsel on appeal in violation of the state and federal constitutions.

> Ground for relief no. II
> The admission of testimony from a medical witness that a complaining witness was "truthful" and the admission of a letter written from and to non-testifying co-defendants as proof of the guilty [sic] of a defendant violates the Confrontation Clause of the United States Constitution.

6

Ground for relief no. III
It is a violation of the United States Constitution, Sixth Amendment to impose a sentence greater than the maximum based on fact findings not inherent in a verdict or expressly found by the jury.

Ground for relief no. IV
The failure to instruct the jury on every essential element necessary to sustain a conviction violates the Constitutional right to due process of law and to a fair trial by jury.

Ground for relief no. V
When the prosecutor in a criminal case commits misconduct designed to inflame the passions and prejudices of the jury, any resulting conviction violates the United States Constitutions [sic], the Fourteenth Amendment, due process of law and requires reversal when the misconduct affects the fairness of the proceedings.

Ground for relief no. VI
When trial counsel fails to raise proper objections, and the defense is prejudiced thereby, the defendant has been denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendants [sic] of the United States Constitution.

Ground for relief no. VII
The absence of clear and convincing evidence the defendant is likely to commit sexual offences in the future precludes the adjudication of the defendant as a sexual predator under R.C. § 2950.09, et seq. in violation of the United States Constitution, Sixth [and] Fourteenth Amendants [sic].

(Capitalization and punctuation altered from the original.) Respondent filed an Answer/Return of Writ on January 5, 2007 (Docket #5). Flannery filed a Traverse on May 9, 2005 (Docket #12). Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Flannery is in the custody of Mansfield Correctional Institution in Mansfield, Ohio and was sentenced by the Court of Common Pleas of Richland County, Ohio. Flannery filed his petition in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

7

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a state court of a state which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the state court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a)&(d).  This court has jurisdiction over Flannery's petition.

B.     *Evidentiary Hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state proceedings were seriously defective or inadequately recorded.  *See* 28 U.S.C. § 2254(d).  There is no need for an evidentiary hearing in the instant case.  All Flannery's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.     *Exhaustion of State Remedies*

A state prisoner must have no remaining state remedies prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Riggins v. Macklin,* 936 F.2d 790, 793 (6th Cir. 1991).  The prisoner must fairly present any claims to the state in a constitutional context.  *Anderson v. Harless,* 489 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander,* 912 F.2d 878, 881-83 (6th Cir. 1990).

Flannery has no remaining state remedies for his claims.  Thus, Flannery has exhausted his state remedies.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly a constitutional claim to the highest state court in a federal constitutional context.  *Anderson,* 489 U.S. 4; *Picard,* 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of  "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

9

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman,* 501 U.S. at 750.

Respondent contends that Flannery has procedurally defaulted his third and fifth grounds for relief.

### 1.    Procedural default and Flannery's third ground for relief

In his third ground for relief Flannery argues that his sentence was enhanced based on findings of fact by the court in violation of the Sixth Amendment.  Respondent points out that in his appeal to the state appellate court Flannery did not argue that his sentencing violated federal law.  Rather, Flannery based his arguments exclusively on state law.

Flannery argues that his sentencing violates the holding in *Blakely v. Washington*, 542 U.S. 296 (2004).  *Blakely* held that a judge may not impose a sentence in excess of the sentence allowed on the basis of facts reflected in the jury's verdict or admitted by the defendant.  Flannery contends that the sentence imposed on him was increased as a result of judicial factfinding of the sort barred by *Blakely*.

Flannery filed his appeal to the state appellate court on November 8, 2004.  *Blakely* was decided on June 24, 2004.  The state appellate court issued its decision on April 1, 2005.  Flannery does not allege that he sought leave of the state appellate court to amend or supplement his brief to include in his appeal arguments based on the holding in *Blakely*, nor does he allege that he applied for the appellate court to reconsider its decision in light of *Blakely*.  *See* Ohio App. R. 15(C), 16(C), and 26(A).  Thus, Flannery defaulted this claim in the state appellate court.

Flannery did argue in his memorandum in support of jurisdiction in the Ohio

10

Supreme Court that his sentence violated the holding in *Blakely*.  Under Ohio law, however, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first raised in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  Thus, it is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  This court must presume, therefore, that the Ohio Supreme Court refused to look at Flannery's claim based on an alleged violation of *Blakely* because Flannery failed to raise that claim in the state appellate court.  For this reason Flannery did not fairly present this claim to the highest court in Ohio.

Flannery argues that the rule requiring that arguments ust be raised in the state appellate courts before raising them in the Ohio Supreme Court is not an adequate and independent state ground on which Ohio may rely to foreclose habeas review.  Flannery contends that Ohio appellate courts inconsistently grant relief under *Blakely* even when appellants cite state law alone.  Flannery cites, however, only cases decided after February 27, 2006, the date on which the Ohio Supreme Court on the authority of *Blakely* overturned portions of Ohio's sentencing statute as unconstitutional.  *See State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).  Flannery cites no cases in which Ohio appellate courts granted relief pursuant to *Blakely* even when appellants cited state law alone prior to the Ohio Supreme Court's decision in *Foster*.  Moreover, even if Flannery could cite such cases, this would not aid his argument.  That state appellate courts reach a federal

11

question even when appellants cite state law alone does not demonstrate that Ohio is inconsistent in following the rule that arguments in must be raised in the state appellate courts before raising them in the Ohio Supreme Court. It merely demonstrates that federal questions may sometimes be raised by a state court rather than by an appellant. The rule regarding when the Ohio *Supreme* Court will look at the merits of an issue remains the issue must be raised *somehow* in the state appellate court before the Ohio Supreme Court will consider it. Flannery's third ground for relief has been defaulted because his federal claim was not raised in the state appellate court.

Flannery fails to show cause and prejudice for his procedural default. For this reason, the magistrate judge recommends that the court dismiss Flannery's third ground for relief as procedurally defaulted.

### 2. *Procedural default and Flannery's fifth ground for relief*

In his fifth ground for relief Flannery argues that prosecutorial misconduct deprived him of due process of law. In particular, he asserts that the prosecutor began weeping during his opening statement, stopped to collect himself, then told the jury, "I apologize, I've tried many cases, I've never had this happen." Flannery's trial attorney failed to object to the prosecutor's conduct or ask for a curative jury instruction, and the state appellate court noted the defense's failure to object or ask for a curative instruction in dismissing this claim on appeal.

"[I]n *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982), the Supreme Court specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000).

12

Thus, Flannery's failure to object contemporaneously to the prosecutor's alleged misconduct procedurally defaulted his fifth ground for relief.

Flannery cites as cause for his procedural default his trial counsel's ineffective performance.  Ineffective assistance of counsel may constitute cause for failing to properly present a claim before a state court.  *See Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006).  Counsel has been ineffective if his or her conduct falls below an objective standard of reasonableness and if there is a reasonable probability that but for counsel's ineffective performance, the outcome of the proceedings would have been different.  *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).  Ineffective assistance of counsel may only serve as cause for a procedural default, however, if the ineffective assistance of counsel claim itself was not procedurally defaulted or if cause and prejudice for such default exists.  *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).

Flannery did raise in the state appellate court and in the Ohio Supreme Court his claim that trial counsel had been ineffective for failing to object to the prosecutor's alleged misconduct in crying in front of the jury.  Thus, Flannery has preserved his argument that counsel's ineffective performance is cause for the procedural default in failing to object contemporaneously to the prosecutor's alleged misconduct.

Flannery does not show, however, that there is a reasonable probability that had counsel objected to the prosecutor's conduct or asked for a curative jury instruction the outcome of his trial would have been different.  The state appellate court reviewing Flannery's direct appeal made the following relevant findings of fact and law:

> [A] conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty.  *State v. Benge,* (1996) 75 Ohio St. 3d 136, 661 N.E.2d 1019.  Furthermore,

13

"[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning."  *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.

{¶ 96} Assuming arguendo, that the prosecutor did weep during his opening statement, we do not find that such conduct rises to the level of prejudicial error necessary to find that Appellant was deprived of a fair trial.

{¶ 97} Clearly, the jury was not swayed or influenced by the prosecutor's statements.

*Flannery*, 2005 WL 750077 at *8.  The state appellate court's finding that absent the prosecutor's comments the outcome of the trial would have been the same undercuts Flannery's argument that the outcome of his trial would have been different if his counsel had objected to the prosecutor's conduct.  Flannery must show by clear and convincing evidence that the state court erred in finding that the jury was not influenced by the allegedly improper conduct.  Flannery offers no evidence of any kind that the state court erred in this respect.  Flannery cannot, therefore, prove that he was prejudiced by his trial counsel's allegedly deficient performance.   Because he cannot show that he was prejudiced by counsel's performance, he cannot demonstrate that he had ineffective assistance of trial counsel.

Flannery has procedurally defaulted his claim of prosecutorial misconduct and fails to show cause and prejudice sufficient to excuse his default.  For this reason the magistrate judge recommends that the court dismiss Flannery's fifth ground for relief as procedurally defaulted.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

14

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established

15

precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

 "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Flannery's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.  *Whether appellate counsel's failure to argue federal grounds for relief during Flannery's  direct appeal constituted ineffective assistance of appellate counsel*

In his first ground for relief Flannery contends that because his appellate counsel failed to present federal constitutional bases for his assignments of error raised in the state appellate court, he received ineffective assistance of appellate counsel. Respondent denies that Flannery received ineffective assistance of appellate counsel.

Defendants have a right to appointed counsel for the first appeal of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990). The standard enunciated in *Strickland*, 466 U.S. 668, is applicable to

16

claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's appellate counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of appellate counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."  *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101

17

(1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of appellate counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

When Flannery's appellate counsel raised in the state appellate court assignments of error corresponding to Flannery's second, third, fourth, fifth, and seventh grounds for relief, counsel failed to assert that those assignments of error were violations of Flannery's

18

federal rights as well as violations of state law.  The court will examine whether the failure to raise any of these claims as a federal claim constituted ineffective assistance of appellate counsel.

1.    *Ineffective assistance of appellate counsel and the failure to raise Flannery's second, fourth, fifth, and seventh grounds for relief as federal claims*

Flannery cannot show that he had ineffective assistance of counsel when counsel failed to raise federal claims corresponding to his second, fourth, fifth, and seventh grounds for relief because Flannery cannot show that he was prejudiced by the failure to raise these claims as federal claims.

a.    *Failure to raise the second ground for relief as a federal claim*

In his second ground for relief Flannery argues that the admission of testimony from a medical witness that another witness was "truthful" and the admission of a letter between co-defendants as proof of Flannery's guilt violated the confrontation clause of the Sixth Amendment.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause secures defendants an adequate opportunity to cross-examine adverse witnesses.   See, *e.g., Mattox v. United States,* 156 U.S. 237, 242-243 (1895); *Douglas v. Alabama,* 380 U.S. 415, 418 (1965).  The clause was enacted to ensure that a defendant had the opportunity to test a declarant's testimony before a jury:

> The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of

19

the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States*, 156 U.S. 237, 242-243 (1895).  The Confrontation Clause does not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Kentucky v. Stincer,* 482 U.S. 730, 739 (1987).

The Confrontation Clause limits in two ways the types of hearsay which may be admitted at trial:

> First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity.  In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.
>
> The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule."  The principle recently was formulated in *Mancusi v. Stubbs* :
>
> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.'  It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.'"

*Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980) (citations and footnote omitted).

The admission of hearsay in violation of the Confrontation Clause is subject to harmless error analysis.  "For purposes of federal habeas corpus review, a constitutional error that implicates trial procedures is considered harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *Calvert v. Wilson*, 288 F.3d

823 (6th Cir. 2002) (citing *Brecht v. Abrahamson,* 507 U.S. 619 (1993)).

Flannery was not prejudiced by his appellate attorney's failure to argue that the admission of medical evidence supporting Adkins' testimony offended the constitution. Flannery contends that the following testimony from Joann Smalley ("Smalley"), a registered nurse who examined Gaines after the assaults, was impermissible because it allowed one witness to vouch for the truthfulness of another.  After describing the physical examination of Gaines, Smalley testified as follows:

> Q.   How would you describe Ashley [Gaines]; was she cooperative as most patients you come in contact with?
> A.   She was very agitated, like I said, and very angry.  It took a lot of support to allow me to obtain the evidence that she did allow me to obtain.  She did not want me to do the vaginal exam.  She was just, she had had enough.  She stated I have had enough, I want to go home.
> Q.   Did you ask her specifics about the sexual assaults that she related to you?
> A.   Yes, I did.
> Q.   Was she candid with you from what you could tell?
> A.   Yes, she was.  Yes.

Transcript of Proceedings ("Tr."), Answer, Exh. N, pp. 416-17.

The court need not decide whether this evidence was properly admitted because no reasonable person could find that this evidence had a substantial and injurious effect or influence in determining the jury's verdict.  The testimony of both victims and the physical evidence adduced at trial supporting that testimony provided overwhelming evidence of Flannery's guilt.  Smalley's statement of personal belief that Gaines was candid when Smalley examined and questioned her is insignificant by comparison.  For this reason, Flannery cannot show that his appellate attorney's failure to assert this claim as a federal claim prejudiced Flannery.

Moreover, Flannery's trial counsel failed contemporaneously to object to Smalley's

testimony.  Thus, framing this assignment of error on appeal as a federal claim would make no difference in any case because objections to that testimony were already procedurally defaulted.

Nor was Flannery prejudiced by his appellate attorney's failure to assert a federal claim regarding admission of the letter by a co-conspirator.  In reviewing the parallel state claim upon direct review, the state appellate court found the following:

{¶ 39} Corrections Officer Karla Likes found a letter in co-defendant George Keeton's jail cell, written by co-defendant Richard Myers.  The State introduced the letter at trial to establish that Keeton, Myers and Appellant Flannery had engaged in a conspiracy to avoid prosecution and conviction.   The trial court admitted the letter, [sic] into evidence on the basis that it contained statements of a co-conspirator made in furtherance of a conspiracy.

{¶ 40} Appellant Flannery maintains that there is no evidence that he conspired with Keeton and Myers and further maintains that any conspiracy that may have existed ended when the parties were arrested.

{¶ 41} As to appellant's argument, we find the evidence supports the conclusion that Appellant was involved in a conspiracy and that such conspiracy did not end when the parties were arrested.  Instead, the letter from Myers to Keeton, [sic] informed Keeton how he should testify in order to avoid conviction of the crimes.  The Ohio Supreme Court has recognized the admissibility of this type of evidence in *State v. DeRighter* (1945), 145 Ohio St. 552, 62 N.E.2d 332. The Court stated:

{¶ 42} " * * * [T]he single fact that the crimes already had been committed does not render this evidence inadmissible if the acts and declarations occurred during the pendency of the unlawful enterprise and in furtherance of the common object." Id. at 558, 62 N.E.2d 332.

{¶ 43} In support of this conclusion, the Court cited 2 Wharton on Criminal Evidence, 11 Ed., 1205, Section 715, which provides:

{¶ 44} "The acts and declarations of a conspirator are admissible against a coconspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the offense, but also its subsequent concealment.  The theory for the admission of such evidence is that persons who conspire to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves

after the commission thereof into a conspiracy to avoid arrest and implication."  Id. at 558-559, 62 N.E.2d 332.

{¶ 45} Thus, we conclude the trial court properly admitted Exhibit 21 as the conspiracy had not terminated following the parties' arrests.  Instead, Myers and Keeton continued to conspire in order to avoid conviction.

{¶ 46} The letter specifically mentions "my car."  It is written from the perspective of the person driving the car.  Many of the facts stated in the letter mirror the sequence of events testified to by the victims.  The letter mentions the other co-defendants by name.  The letter mentions that "John Boy and Sonny" left and "me [Myers], you [Keeton] and Jason and the girls still wanted to get drunk . . . so we get into my car."

{¶ 47} We find that there was sufficient evidence to allow this letter to be admitted into evidence and that the trial court did not abuse its discretion in admitting same.

*State v. Flannery,* 2005 WL 750077 (Ohio App. April 1, 2005).

Ohio law permits the introduction of such statements against interest by defendants and co-conspirators as bearing sufficient indicia of reliability as to warrant their admission at trial.  *State v. Hand*, 107 Ohio St. 3d 378, 393-95, 840 N.E.2d 151, 174-75 (2006).  The Supreme Court has held that the Constitution permits states to admit nontestimonial statements bearing indicia of reliability even when defendants have no opportunity to cross-examine the author of the statements.  *See Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980), and *Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law--as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.").  Had Flannery's appellate counsel argued, therefore, that admission of the letter offended the confrontation clause, that argument would have been found to be without merit.  For this reason, Flannery cannot show that the allegedly deficient performance of appellate counsel prejudiced him in this respect.

Flannery is unable to show that the failure to frame as federal claims objections to the admission of the statement by Smalley or the admission of the letter by a co-defendant prejudiced him.   Flannery is unable to show, therefore, that his appellate counsel's performance was ineffective with respect to these alleged errors.

> b.    *Failure to raise the fourth ground for relief as a federal claim*

In his fourth ground for relief Flannery argues that he was denied due process when the court failed to instruct the jury regarding every essential element necessary to sustain three of the counts on which he was convicted.  In reviewing the state claim parallel to this claim, the state appellate court hearing Flannery's direct appeal found the following:

{¶ 150} The record indicates defense counsel failed to object to the instructions before the jury retired to deliberate.  Crim. R. 30 provides, in pertinent part:

{¶ 151} "(A) Instructions; error; record

{¶ 152} " * * *

{¶ 153} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * * "

{¶ 154} Errors not brought to the trial court's attention are waived unless such errors rise to the level of "plain error".

{¶ 155} "Plain error" is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise."  See *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332.

{¶ 156} A jury instruction does not constitute plain error unless the outcome of the trial would clearly have been different but for the error. *Id.* at paragraph two of the syllabus.  See also *State v. Moreland* (1990), 20 Ohio St.3d 58, 62.  In addition, "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Long,* supra, at paragraph three of the syllabus.

24

{¶ 157} Although we find no error in the trial court's failure to give the aiding and abetting instruction, even if we did find error, the overwhelming evidence of appellant's guilt renders any error harmless and not plain.

{¶ 158} In this case, appellant has not shown that the outcome of the trial would certainly be different if the court had given a different version of the instruction.

*State v. Flannery,* 2005 WL 750077, *13 (Ohio App. April 1, 2005).

As any claim regarding the impropriety of the jury instructions was procedurally defaulted, the failure of Flannery's appellate counsel to frame such objections as federal claims made no difference to the outcome of his appeal.  Thus, Flannery cannot show that his appellate counsel's performance was ineffective in this respect.

     *c.*     *Failure to raise the fifth ground for relief as a federal claim*

In his fifth ground for relief Flannery argues that he was deprived of due process of law by prosecutorial misconduct.  As has already been noted, Flannery's fifth ground for relief, alleging prosecutorial misconduct for weeping during opening statement and telling the jury "I apologize, I've tried many cases, I've never had this happen," was procedurally defaulted when Flannery's trial attorney failed to object to the prosecutor's conduct or ask for a curative jury instruction.  Because this claim was procedurally defaulted, the failure of appellate counsel to frame objections to the prosecutor's conduct as federal claims made no difference to the outcome of Flannery's appeal.  Flannery cannot show, therefore, that his appellate counsel's performance was ineffective with respect to Flannery's fifth ground for relief.

     *d.*     *Failure to raise the seventh ground for relief as a federal claim*

In his seventh ground for relief Flannery argues that the absence of clear and convincing evidence that he was likely to commit sexual offences in the future precluded

a finding that he was a sexual predator pursuant to Ohio Rev. Code § 2950.09, *et seq.* and that the trial court's finding that he was a sexual predator violated rights protected by the Sixth and Fourteenth Amendments.  Flannery contends that the failure of his appellate counsel to raise these federal claims in his state appeal constituted ineffective assistance of appellate counsel.

The nature of Flannery's claim that finding him to be a sexual predator without clear and convincing evidence violated the Sixth Amendment is not clear.  As regards a Fourteenth Amendment violation, Flannery seems to be arguing that the adjudication of him as a sexual predator without clear and convincing evidence violated his right to due process.  "[D]ue process claims . . . may proceed either upon the theory that a deprivation has occurred without procedural due process or that there has been a substantive due process violation; that is, either the official conduct shocks the conscience, as in *Rochin*, [342 U.S. 165 (1952)] or infringes a specific constitutional guarantee, as in *Monroe v. Pape*, [365 U.S. 167 (1961)]."  *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985) (en banc).

The state appellate court reviewing Flannery's conviction made the following relevant findings of fact and law:

> {¶ 129} In the eleventh assignment of error, appellant asserts that the trial court's determination that he be classified as a sexual predator was against the manifest weight of the evidence.  We disagree.
>
> {¶ 130} In *State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive.  As such, we will review this assignment of error under the standard of review contained in *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St. 2d 279, 376 N.E.2d 578.  Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
>
> {¶ 131} Revised Code § 2950.01(E) defines a "sexual predator" as "a person who

26

has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Revised Code § 2950.09(B)(3) sets forth the relevant factors a trial court is to consider in making its determination:

{¶ 132} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:

{¶ 133} "(a) The offender's or delinquent child's age;

{¶ 134} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;

{¶ 135} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;

{¶ 136} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;

{¶ 137} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

{¶ 138} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;

{¶ 139} "(g) Any mental illness or mental disability of the offender or delinquent child;

{¶ 140} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

{¶ 141} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;

{¶ 142} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."

{¶ 143} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. § 2950.09(C)(2)(b).  Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."  State v. Garcia (1998), 126 Ohio App.3d 485, 487, 710 N.E.2d 783.

{¶ 144} The appellant did not present any expert testimony or evidence at the sentencing hearing.  Nor did appellant's counsel request a continuance to prepare for the hearing.

{¶ 145} The trial court noted that one of the victims was seventeen years old.  (T. at 799). R.C. 2950.09(B)(3)(c).  The offense involved multiple victims.  (T. at 799). R.C. 2950.09(B)(3)(d).  Alcohol was used to impair the victims.  Id. R.C. 2950.09(B)(3)(e).  The Court considered appellant's prior juvenile record which involved at least seven assault offenses.  (T. at 798-799).  R.C. 2950 .09(B)(3)(f). The court found that the actions were a calculated pattern of abuse.  (T. at 799). R.C. 2950.09(B)(3)(i).

{¶ 146} We find clear and convincing evidence in the record to support the trial court's classification of Appellant as a sexual predator.  State v. Nyel, 1st Dist. No. C-020640, 2003-Ohio-4961.

State v. Flannery, 2005 WL 750077, at *11-*13 (Ohio App. April 1, 2005).

The state appellate court found that there was clear and convincing evidence to support the trial court's determination that Flannery was a sexual predator under Ohio law. This finding by the state court is presumed correct, and Flannery must overcome that presumption by clear and convincing evidence if the presumption is to be overcome.

Flannery does not present clear and convincing evidence that the state appellate court erred.  Thus, Flannery does not demonstrate that his adjudication as a sexual predator violated rights protected by the Sixth Amendment or violated the Fourteenth Amendment protection of procedural or substantive due process.  Consequently, had Flannery's appellate attorney framed the parallel state claim as a federal claim, the outcome of Flannery's appeal would not have been different.  Flannery cannot show, therefore, that his appellate counsel's allegedly deficient performance prejudiced him.

28

Absent a showing a prejudice, Flannery cannot support his claim that he suffered ineffective assistance of appellate counsel because appellate counsel failed to argue that finding Flannery to be a sexual predator violated his right to due process.

      2.      *Ineffective assistance of appellate counsel and the failure to raise Flannery's third ground for relief as a federal claim*

Flannery also contends that the failure of appellate counsel to argue that his sentencing violated the holding in *Blakely v. Washington*, 542 U.S. 296 (2004), constituted ineffective assistance of counsel.  Respondent answers that appellate counsel's performance was not ineffective.

      a.      *Whether appellate counsel's decision not to argue that Flannery's sentence violated the holding in* <u>Blakely</u> *was objectively deficient*

The Sixth Circuit requires courts to consider 11 factors when determining whether an appellate counsel's representation fell below an objective standard of reasonable performance:

    (1)    Were the omitted issues "significant and obvious"?
    (2)    Was there arguably contrary authority on the omitted issues?
    (3)    Were the omitted issues clearly stronger than those presented?
    (4)    Were the omitted issues objected to at trial?
    (5)    Were the trial court's rulings subject to deference on appeal?
    (6)    Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
    (7)    What was appellate counsel's level of experience and expertise?
    (8)    Did the petitioner and appellate counsel meet and go over possible issues?
    (9)    Is there evidence that counsel reviewed all the facts?
    (10)   Were the omitted issues dealt with in other assignments of error?
    (11)   Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 171 F.3d at 427-28.  This list provides reviewing courts with factors to consider and is not a mere checklist that may or may not produce a correct "score."  *Id.* at 428.

*Blakely* had an immediate impact on the practice of criminal defense.  *Blakely*

29

clarified a rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *Apprendi* held

that "other than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the statutory maximum must be submitted to a jury and proved beyond a

reasonable doubt."  *Blakely*, 542 U.S. at 301.  *Blakely* defined *Apprendi's* "statutory

maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts*

*reflected in the jury verdict or admitted by the defendant.*"  *Id.* at 303 (emphasis in original).

The statutory maximum is not the maximum sentence allowed by statute after the judge

finds additional facts but the maximum the judge may impose without any additional factual

findings.  *Id.* at 303-04.

At the time Flannery filed his appellate brief, *Blakely* had not yet been decided by

the United States Supreme Court.[1]  *Blakely* was decided after Flannery filed his appellate

brief but before the appellate court's decision in his case.  As has already been shown,

Flannery's appellate counsel could have raised any issues posed by *Blakely* by filing a

motion for leave to amend Flannery's appellate brief before the court's decision or by filing

an application for reconsideration after the court's decision.  Flannery's appellate counsel

had more than ten months, from June 24, 2004, the date of the decision in *Blakely*, until

April 11, 2005, the last day on which he could have filed a motion for reconsideration

pursuant to Ohio App. R. 26(A), to raise a claim that Flannery's sentence violated the

holding in *Blakely*.

The five considerations described in *Mapes* applicable to this case lead to the

---

[1]  Even though *Blakely* was decided after the filing of the appellate briefs, it was applicable to Flannery's appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review).

conclusion that Flannery's appellate counsel's performance fell below an objective standard of reasonableness when he failed to raise the issue that the court's sentence violated the holding in *Blakely*.[2]  First, the omitted issue from *Blakely* was both significant and obvious. The omitted issue was significant because, as shown below, had the issue been raised on appeal there was more than a reasonable probability that Flannery's sentence would have been overturned.  The issue raised by *Blakely's* definition of "statutory maximum" was also obvious because *Blakely* clarified the Supreme Court's earlier holding in *Apprendi*.  Prior to *Blakely*, criminal defense attorneys in Ohio had been trying to challenge the constitutionality of Ohio Rev. Code § 2929.14(B), the statute Flannery was sentenced under, using the holding in *Apprendi*.  Ohio courts, however, consistently held that sentences within the statutory range set forth in § 2929.14 did not violate the Supreme Court's holding in *Apprendi*.  *See State v. Graber*, 2003 Ohio App. LEXIS 4828, 6-7 (Ohio Ct. App. 2003).  Thus, when the Supreme Court clarified the definition of "statutory maximum" for *Apprendi* purposes in *Blakely*, the issues arising from the holding of *Blakely* became obvious to criminal defense attorneys in Ohio.[3]

Second, there was no arguably contrary authority on the omitted issue to suggest to Flannery's appellate counsel that he should not raise the issue with the court.  Although some Ohio courts found that *Blakely* did not invalidate Ohio's sentencing statute, the United States Supreme Court has recently stated:

---

[2]  Questions 4 through 6 are not relevant, and with respect to questions 7 through 9 there is no information to answer those questions.

[3]  The court further notes that the *Blakely* decision was widely publicized and discussed not only in newspapers but in legal periodicals.

31

> Asking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, we have said, is the *very* inquiry *Apprendi's* "bright-line rule" was designed to exclude.  See *Blakely,* 542 U.S., at 307-308, 124 S.Ct. 2531.  But see *Black,* 35 Cal.4th, at 1260, 29 Cal. Rptr.3d 740, 113 P.3d, at 547 (stating, remarkably, that "[t]he high court precedents do not draw a bright line").

*Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856, 166 L. Ed. 2d 856, 2007 WL 135687, at *13 (Jan. 22, 2007) (footnote omitted).  The Supreme Court having found in *Blakely* that the holding of *Apprendi* was a bright line rule, the state of Ohio cannot claim that the erroneous rulings of state appellate courts are arguable contrary authority to the United States Supreme Court's holding in either *Apprendi* or *Blakely*.

Third, the omitted issue from *Blakely* is clearly stronger than any of the other issues raised by Flannery's appellate counsel.  As shown below, the argument that Flannery's sentence was contrary to *Blakely* would probably have resulted in the overturning of Flannery's sentence.

Fourth, the omitted issue was not addressed through any other assignment of error raised in the appellate court.  Flannery's appellate counsel did not raise any similar issue with respect to the constitutionality of Flannery's sentence.

Finally, the decision to omit this issue was unreasonable, and only an incompetent attorney would have made such a decision.  *Blakely* invalidated Flannery's sentence as unconstitutional.  Failure to raise such an issue within the window provided by Ohio law in Flannery's case "so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  For these reasons the performance of Flannery's appellate counsel fell below the objective standard of reasonableness.

32

> b.    Whether appellate counsel's failure to argue that Flannery's sentence violated the holding in <u>Blakely</u> prejudiced Flannery

To demonstrate that he was prejudiced by appellate counsel's objectively deficient performance, Flannery must show there is a reasonable probability that, absent the errors, the appellate court would have granted relief on his claim that his sentencing violated *Blakely*.  In the wake of *Foster*, the only possible conclusion is that Flannery immediately or eventually would have won relief.

At the time of Flannery's conviction and sentencing Ohio Rev. Code § 2929.14 ("§ 2929.14") governed sentencing in Ohio.  Section 2929.14(B) provided as follows:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G)[4] of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>
> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

Section 2929.14(A)(1) provided that for a felony of the first degree "the prison term shall be three, four, five, six, seven, eight, nine, or ten years."  Section 2929.14(A)(2) provided that for a felony of the second degree "the prison term shall be two, three, four, five, six, seven, or eight years."  Section 2929.14(A)(3) provided that for a felony of the third degree "the prison term shall be one, two, three, four, or five years."  Under Ohio law kidnaping was a crime of the first or second degree (depending upon whether the victim was harmed

---

[4]  Sections 2929.14(D) & (G) were not applicable to Flannery's offense.

33

and released in a safe place), rape was a crime of the first degree, felonious assault was a crime of the second degree, and tampering with evidence was a crime of the third degree.  *See* Ohio Rev. Code §§ 2903.11(D), 2905.01(C), 2907.02(B), and 2921.12(B). Flannery was charged with and convicted of first degree kidnaping.

The court sentenced Flannery to six years for the kidnaping of Adkins, eight years for the kidnaping of Gaines, six years each for aiding and abetting the rapes of Adkins and Gaines, eight years each for raping Adkins and Gaines, three years for felonious assault, and one year for tampering with evidence.  In sentencing Flannery the court noted the extreme brutality of the crimes and that multiple victims were involved and observed that shorter sentences would demean the seriousness of the crimes and not adequately protect the public.  The court reviewed the details of the crimes as alleged by the prosecution and concluded that Flannery gave the women alcohol to diminish resistance, isolated the women, used brutal force against them, and was a principal offender in the commission of the crimes.  As these findings of fact were not implicit in the jury's determination of guilt, the findings that the crimes were unusually brutal and multiple victims were involved and that Flannery gave the women alcohol to diminish resistance, isolated the women, used brutal force against them, and was a principal offender in the commission of the crimes were the product of judicial factfinding of the sort prohibited by *Blakely*.

In sentencing Flannery to more than the minimum terms for rape, kidnaping, and felonious assault, the court had to find that the shortest prison term would demean the seriousness of Flannery's conduct or would not adequately protect the public from future crime by Flannery or others.  The trial court sentencing Flannery explicitly found that anything less than the sentences imposed would demean the seriousness of his crime and

34

that it would not protect society from future crimes by Flannery. Absent a jury finding that the offender committed a particularly serious form of an offense, a sentence based on a determination that anything less than the sentence imposed would demean the seriousness of a crime requires the sort of judicial factfinding prohibited by *Blakely*.

Also at the time of Flannery's sentencing, Ohio Rev. Code § 2929.14(E) governed whether multiple sentences should be served consecutively or concurrently. Subsection 2929.14(E)(4) in particular determined that Flannery should serve consecutive sentences. That subsection read in relevant part:

> (E) . . . (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may inquire the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crimes or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
> (a) The offender committed one or more of the multiple offenses while was awaiting trial or sentencing, was under a sanction . . . , or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that a single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender.

To impose Flannery's sentences consecutively, § 2929.14(E)(4) required the court to find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Because subsections 2929.14(E)(4)(a) and (c) did not apply to Flannery, the court also had to find that the harm caused by two or more of his multiple offenses was so great or unusual that a single prison term for any of the offenses did not adequately reflect the seriousness of Flannery's

conduct.  Absent a jury finding that Flannery committed a particularly serious form of the offense due to the unusual harm it caused, a determination that a single prison term for any of the offenses would not adequately reflect the seriousness of Flannery's conduct requires the sort of judicial factfinding prohibited by *Blakely*.

In *Foster* the Ohio Supreme Court found, in light of *Blakely*, that certain sections of the Ohio sentencing statute were unconstitutional.  This included finding that §§ 2929.14(B), (C), and (E)(4) were unconstitutional.  *Foster*, 109 Ohio St. 3d at 25, 845 N.E.2d at 494.  To cure this unconstitutionality, the Ohio Supreme Court severed these sections and others from the sentencing statute.  *Id.*, 109 Ohio St. 3d at 29, 845 N.E.2d at 497.  The court also ordered the following:

> {¶ 104} [C]ases . . . pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion.  We do not order resentencing lightly.  Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court.  Ohio's felony-sentencing code must protect Sixth Amendment principles as they have been articulated. . . . {¶ 106} As the Supreme Court mandated in *Booker,* we must apply this holding to all cases on direct review. *Booker,* 543 U.S. at 268, 125 S.Ct. 738, 160 L.Ed.2d 621, quoting *Griffith v. Kentucky,* 479 U.S. at 328, 107 S.Ct. 708, 93 L.Ed.2d 649. ("A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases * * * pending on direct review or not yet final' ").

*Id.*, 109 Ohio St. 3d at 31, 845 N.E.2d at 499.

Had Flannery's appellate counsel asserted on appeal, therefore, that Flannery's sentence violated the holding in *Blakely*, Flannery would have won appellate relief, either immediately or by means of a motion to reopen his appeal pursuant to Ohio App. R. 26(A) after the decision in *Foster*.  By failing to raise this issue, Flannery's appellate counsel defaulted this ground for appellate relief and prejudiced Flannery thereby.

36

The performance of Flannery's appellate counsel fell below an objective standard of reasonableness and prejudiced Flannery.  The magistrate judge recommends, therefore, that the court find that Flannery was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments and that the court grant in part Flannery's first ground for relief.

B.    *Whether the admission of testimony from a medical witness regarding a victim's truthfulness violated the confrontation clause*

In his second ground for relief Flannery argues that the admission of testimony from Smalley that Gaines appeared to be truthful in answering Gaines' questions when Gaines treated her after the assault violated his right to confront the witnesses against him.  As has already been described, *supra* at pp. 19-22, this claim is without merit because no reasonable person could find that this evidence had a substantial and injurious effect or influence in determining the jury's verdict.  Such a finding is necessary in determining that a violation of the confrontation clause entitles a habeas petitioner to relief.

Flannery also argues in his second ground for relief that his right to confront the witnesses against him were also violated by admission of a letter written by a co-conspirator.  As described above, *supra* at pp. 22-24, Flannery's claim that admission of the letter violated his right to confront the witnesses against him is entirely without merit.

For these reasons the magistrate judge recommends that the court overrule Flannery's second ground for relief, alleging violations of the confrontation clause.

C.    *Whether Flannery was denied due process because the court failed to instruct the jury regarding every element of the charges against him*

In his fourth ground for relief Flannery argues that he was denied due process when the court failed to instruct the jury regarding every essential element necessary to sustain

37

three of the counts on which he was convicted.

The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976).  The analysis of alleged violations of the right is identical under either amendment.  *Id.*  "A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).  "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding."  *Strickland v. Washington*, 466 U.S. 668, 684 (1984).  "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law."  *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Not all violations of the right to a fair trial, however, entitle a petitioner to habeas relief.  In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Supreme Court held that a court considering a collateral review of a conviction should weigh constitutional "trial error"[5] by

---

[5]  According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]."  *Id.,* at 307-308.  At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards."  *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process.  See *id.,* at 309-310.  Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

(1) evaluating the error in the context of the entire record; (2) ask whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) grant relief only if there is grave doubt about whether the error was harmless.  *id.* at 638.  A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

In reviewing the state claim parallel to this claim, the state appellate court hearing Flannery's direct appeal found the following:

{¶ 150} The record indicates defense counsel failed to object to the instructions before the jury retired to deliberate.  Crim.R. 30 provides, in pertinent part:

{¶ 151} "(A) Instructions; error; record

{¶ 152} " * * *

{¶ 153} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * * "

{¶ 154} Errors not brought to the trial court's attention are waived unless such errors rise to the level of "plain error".

{¶ 155} "Plain error" is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332.

{¶ 156} A jury instruction does not constitute plain error unless the outcome of the trial would clearly have been different but for the error. *Id.* at paragraph two of the syllabus. See also *State v. Moreland* (1990), 20 Ohio St.3d 58, 62. In addition, "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long,* supra, at paragraph three of the syllabus.

{¶ 157} Although we find no error in the trial court's failure to give the aiding and

---

*Brecht*, 507 U.S. at 629-30.

abetting instruction, even if we did find error, the overwhelming evidence of appellant's guilt renders any error harmless and not plain.

{¶ 158} In this case, appellant has not shown that the outcome of the trial would certainly be different if the court had given a different version of the instruction.

*State v. Flannery,* 2005 WL 750077, *13 (Ohio App. April 1, 2005).

The state appellate court found that Flannery was not prejudiced by the alleged failure to give the correct instruction. This finding is entitled to a presumption of correctness unless Flannery shows by clear and convincing evidence that it is wrong. Flannery has not proffered such evidence. Because Flannery fails to show that he was prejudiced by the alleged error, the court cannot grant him habeas relief. For this reason the magistrate judge recommends that the court overrule his fourth ground for relief.

D.      *Whether Flannery was denied the effective assistance of counsel at trial*

In his sixth ground for relief Flannery alleges that he was denied the effective assistance of trial counsel because trial counsel failed to object to (1) the admission of Smalley's testimony regarding whether she thought Gaines was candid; (2) failed to renew an objection to the admission of a letter of a co-defendant; (3) failed to object to the prosecutor's alleged misconduct in opening statements; (4) failed to object to improper jury instructions; and (5) failed to object to the sentence imposed. Respondent denies that trial counsel was constitutionally ineffective.

The state appellate court reviewing Flannery's appeal made the following relevant findings of fact and law in reviewing this claim:

{¶ 100} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington* (1984), 466

40

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 101} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

{¶ 102} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.

{¶ 103} Further, both the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697. It is based upon this standard that we review appellant's five arguments in support of his Seventh Assignment of Error.

{¶ 104} Appellant argues that his counsel was ineffective in failing to object to the following: (1) the opinion by a nurse that a witness was telling the truth, (2) the admission of the Exhibit 21, the letter by a co-conspirator, (3) the alleged weeping by the prosecutor, (4) the lack of venue concerning the tampering with evidence charge, and (5) the consecutive sentences for the rape and kidnapping charges.[6]

{¶ 105} Having previously failed to find that any of the above was in fact error, we likewise find that counsel was not ineffective in failing to object to same at trial. We therefore find appellant's seventh assignment of error not well-taken.

*State v. Flannery,* 2005 WL 750077, at *8-*9 (Ohio App. April 1, 2005).

Flannery fails to show that the state appellate court's statement of the law or

application of the law to the facts of his case is contrary to a holding of the Supreme Court.

Absent such a showing, the court must conclude that Flannery's contention that he was

---

[6]  Flannery's trial took place prior to the decision in *Blakely*.

denied the effective assistance of trial counsel is without merit.  For this reason, the magistrate judge recommends that the court overrule Flannery's sixth ground for relief.

E.    *Whether the determination that Flannery was a sexual predator without clear and convincing evidence violated the Sixth and Fourteenth Amendments*

In his seventh ground for relief Flannery contends that the determination without clear and convincing evidence that he was likely to commit sexual offences in the future violated rights protected by the Sixth and Fourteenth Amendments.  As had already been shown, *supra* at pp. 26-29, this contention is without merit because Flannery fails to present clear and convincing evidence that the state appellate court erred when it found that the trial court had clear and convincing evidence that he was likely to commit future sexual offenses.  For this reason the magistrate judge recommends that the court overrule Flannery's seventh ground for relief.

IV.

This case garners no sympathy for the defendant.  Nevertheless, this court has taken an oath to uphold the Constitution and laws of the United States.  Reluctantly, for the foregoing reasons the magistrate judge recommends that the court grant Flannery's petition for a federal writ of habeas corpus with respect to part of his first ground for relief, that he was denied the effective assistance of appellate counsel because counsel failed to argue that Flannery's sentencing violated the Supreme Court's holding in *Blakely*.  The magistrate judge also recommends that the court dismiss Flannery's other grounds for relief.

For the reasons given above the magistrate judge recommends that the court vacate Flannery's conviction unless the state of Ohio grants Flannery a new direct appeal within

90 days.[7]


Date:  May  23, 2007                    /s/ Patricia A. Hemann
                                        Patricia A. Hemann
                                        United States Magistrate Judge


## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[7] Because the only constitutional violation is the ineffective assistance of *appellate* counsel, the appropriate remedy is a writ conditioned upon Ohio courts granting a new direct appeal.  *See Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004)